EMELIO SUAREZ, BENIGNO SUAREZ AND .CHARLES NAYA, *Plaintiffs in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed January 12, 1928.

44

*Stuart & Huntley, W. K. Zewadski, Jr.*, and *Wm. C. Pierce*, for Plaintiffs in Error;

*Fred H. Davis*, Attorney General, *Roy Campbell*, Assistant Attorney General, for the State.

BROWN, J.—Plaintiffs in error, Emelio Suarez, Benigno Suarez, and Charles Naya, were convicted in the criminal court of record for Hillsborough county upon an information charging the crimes of larceny and receiving stolen property, and were sentenced to five years imprisonment. They seek by writ of error to review the judgment of conviction.

The original information in this case was filed on August 20, 1926, against C. C. Moore, Valentino Gonzalez, alias C. C. Moore, alias C. R. Brown, Angel Martinez and Charles Naya. The first count of the information charged the larceny on February 20, 1926, of "one Ford Coupe automobile, the same being a gasoline motor propelled vehicle, a further description of same being to the solicitor unknown, of the value of $500.00 in money current in the United States of America, the property of R. T. Joughin and Company, a corporation."

The second count charged the same parties with receiving stolen property on the same date, February 20, 1926, describing the same property referred to in the first count and using the same language in making the description.

The third count charged the larceny of the same automobile on the same date by Valentino Gonzalez, the defendants Angel Martinez and Charles Naya being charged with having been accessories before the fact to such larceny.

About six months later, on January 4, 1927, this information was altered without leave of the court by inserting the names of Emelio Suarez and Benigno Suarez in various places in the information so as to charge them, along with the original defendants, with the offenses alleged in each of the three counts of the indictment, with one exception; that is, in the third count they are charged jointly with Valentino Gonzalez with the larceny of an automobile, but not as accessories before the fact. As to this latter charge,

the third count was left as it originally was, charging Martinez and Naya with being accessories before the fact to such larceny.

After the information had been thus altered, it was re-signed and re-sworn to on said January 4, 1927, by the county solicitor. The record, however, does not show that the altered information was re-filed.

Section 28 of Article V of the Constitution provides that "all offenses triable in said court shall be prosecuted upon information under oath, to be filed by the prosecuting attorney," and Sec. 5976, Revised General Statutes, is to the same effect.

This alteration in the information can hardly be called an amendment. As to the new defendants, it was a new and original information, and should have been re-filed. This change in the information does not appear to fall within any of the classifications of amendments to informations (see 31 C. J. 823, *et seq.*), recognized as allowable in other jurisdictions. But the rather liberal doctrine as to allowance of amendments to informations obtaining in many other states is not recognized in this State where the rules of pleading and practice relative to indictments obtain also as to informations. Secs. 5976 and 6061, Revised General Statutes.

The motion to quash, filed by the defendants Suarez does not object to the information on this point; in fact, the motion alleges that the information was filed on January 4, 1927, and moves to quash it because the same had been mutilated and interlined so as to make it impossible to arrive at its accurate meaning; also because the same is indefinite and uncertain and fails to sufficiently describe the property alleged to have been stolen, by failing to give the motor number or license number. A similar motion to quash was filed by defendant Naya. We do not think there

was any error in the action of the court in overruling these motions. The information only charged the larceny, or receiving as stolen property, of one automobile—the make, style and value of which, and the name of the owner, were set out. This was a sufficient description under our prior decisions. See Mizell v. The State, 38 Fla. 20, 20 So. 769; Peeples v. The State, 46 Fla. 101, 35 So. 223; Clark v. The State, 59 Fla. 9, 52 So. 518; Lasher v. The State, 80 Fla. 712, 86 So. 689.

Inasmuch as the county solicitor re-swore to the information before the clerk of the criminal court of record, it appears that the paper was actually in the custody of the court at the time, although it was not re-filed as it should have been, and objection on this ground, having been waived in the court below by failing to mention it in the motion to quash, and afterward pleading to the merits, we deem it unnecessary to go further here than call attention to the defect and omission. Bryan v. State, 41 Fla. 643, 26 So. 1022; Pittman v. State, 25 Fla. 648, 6 So. 437; Johnson v. State, 58 Fla. 68, 50 So. 529; Sawyer v. State, 113 So. 736. It would appear from the transcript that the information after being altered or amended as above set forth was not subject to the objection that such interlineations made it impossible to arrive at the meaning of the document. Upon the grounds as alleged, both motions to quash were properly denied.

It appears that the defendants Suarez were arrested January 4th and placed on trial January 13th. A document purporting to be a motion for continuance was filed by them January 13th. It states in substance that the defendants had not had sufficient time to prepare their defense and secure material witnesses, without naming them or setting forth what defendants expected to prove by them, but does not expressly move for a continuance. How-

ever, it appears to have been treated as a motion for continuance, and considered and denied by the court. The time between arrest and trial was very brief, but, after perusal of the entire record, it does not appear that the defendants were deprived of the opportunity to secure any material witness or in any way injured by this ruling, even if the motion had been sufficient in form.

The defendant Naya filed a motion for a bill of particulars, specifically describing the property alleged to have been stolen by motor or license number. This motion could very properly have been granted, in view of the character of the evidence subsequently introduced against Naya, which sought to connect him with criminal disposition of some seventeen different automobiles, which had been stolen, by showing that he notarized the bills of sale as to each of them. But we cannot say that Naya was actually injured by the denial of this motion; for not only was the description of the property in the information sufficient under our prior decisions, but the county solicitor, soon after the taking of evidence commenced, proved the motor number of the car described in the information and elected very clearly as to the particular car the defendant was being prosecuted about, and it does not appear that the defendant was deprived of the opportunity to obtain evidence to defend the charge as to such car. Whether a bill of particulars should be granted a defendant in a criminal case rests very largely in the discretion of the trial court, and as it does not appear here that the court abused its discretion, to the injury of the defendant, no reversible error appears. Knowles v. State, 86 Fla. 270, 97 So. 716; Brown v. State, 80 Fla. 741, 86 So. 574. We might observe that the grounds stated in the motion for bill of particulars were meager, vague and general in character, and not sufficient to bring this case within the operation of the princi-

ples laid down in Thomas v. State, 74 Fla. 200, and Thalheim v. State, 38 Fla. 169, 20 So. 938. It was very properly held in those cases that where a bill of particulars is seasonably applied for and reasonably demanded, the matter of requiring the prosecuting attorney to supply it rests largely within the court's discretion is subject to review, and where the denial of the application may result in defeating justice, it will be treated as reversible error.

The defendants Suarez filed a motion for severance, asking that they be tried separately from the other defendants, alleging that they would be embarrassed and prejudiced on the trial with the defendant Charles Naya and the other defendants, because there was pending against Naya numerous informations charging him with similar offenses to those charged in the present information, but in which these defendants were not charged, and that the State in attempting to prove its case as against the defendant Naya would place before the jury testimony tending to prove other numerous charges of a similar character against such defendant, which would necessarily be prejudicial to these defendants, and that no instructions that the court might give to the jury could eliminate from their minds the impressions received after the giving of such testimony; that the testimony which would be offered by the State against Naya would be radically different from that which would be offered against the movants, and wholly inadmissible as against them; that the defense of the movants is antagonistic to that of Naya and the other defendants; Naya, being the person who took the acknowledgment as notary public to the bill of sale evidencing the purchasing of said automobile by these defendants, would be a material witness in their behalf; that Naya was the only witness by whom the defendants could prove the identity of the person who executed the bill of sale to them,

and that unless they were allowed a separate trial, they could not place Naya upon the stand as a witness, and would thereby be deprived of material testimony. This motion was supported by affidavit of both defendants.

Defendant Naya also interposed motion for severance, upon the ground that certain testimony which would be admissible against the defendant Gonzalez would. be inadmissible as against Naya and highly prejudicial to him. That he was a defendant named in several informations by reason of the fact that it is alleged he as notary public took acknowledgments to several bills of sales of automobiles alleged to have been stolen, and that his defense is necessarily different and antagonistic to the interest of the other defendants named in said information, and that if he was forced to go to trial with them the prejudice then existing against the other defendants would have its effect upon the jury as against him.

Both motions were denied and this action of the court is assigned as error.

The granting or denial of a motion for severance is largely discretionary, and the ruling of the trial court thereon will not in general be disturbed where no abuse of discretion is shown. Daniels v. The State, 57 Fla. 1, 48 So. 747; Ballard v. The State, 31 Fla. 266, 12 So. 865; Roberson v. The State, 40 Fla. 509, 24 So. 474; 16 C. J. 784. In the case of Ballard v. The State, *supra*, Sec. 310 of Wharton's Criminal Pleading & Practice, which says that "where the defenses of joint defendants are antagonistic, it is proper to grant a severance," is quoted with approval. On page 786 of 16 Corpus Juris, it is said: "Where from the nature of the case it appears that a joint trial probably would be prejudicial to the rights of one or more of the parties, a separate trial should be granted when properly requested. Thus, where the defenses or interests of two or more jointly

indicted are antagonistic, separate trials may and should be allowed; but the mere fact that one defendant is attempting to escape punishment by throwing the blame on his co-defendant is not sufficient ground therefor.'' In Sec. 1019 of Bishop's New Criminal Procedure, 2nd Ed., it is said: ''The common law rule being for the ordinary case, that the trying together of joint defendants promotes convenience and justice, if in an individual instance the contrary appears, the trial should be separate. Thus * * * antagonistic defenses justify a severance. So, if important evidence, not competent on a joint trial will be admissible on a several, a severance should be permitted.'' And in Sec. 1019a, the same author says: ''If evidence which is incompetent against one defendant is to be introduced against another, and is of a sort to be prejudicial to the former in the eyes of the jury, there should be a severance.'' While the question is not free from difficulty, we are inclined to the opinion that the court below committed reversible error in denying the motion of the defendants Suarez for a severance in this case. The subsequent developments, in the taking of the testimony, showed· that this ruling was not a harmless error. The theory of the State, in its case against Naya, seems to have been that guilty knowledge on his part was shown by the fact that he prepared and notarized quite a number of bills of sales of automobiles which had been stolen during the early part of 1926. The introduction of the testimony as to the stealing of a dozen or more automobiles, bills of sales of which were notarized and in some instances prepared by Naya, but with which the defendants Suarez were not shown to have been in any wise connected, was inadmissible evidence as against them, and yet having been admitted on their joint trial with Naya, the tendency of this evidence was prejudicial to the defendants Suarez. Nor does

it appear anywhere in the record that the court instructed the jury to confine their consideration of this testimony to the offense as charged against the defendant Naya, and not to consider it as evidence against defendants Suarez. But it is doubtful, even if such an instruction had been given, that it would have removed from the minds of the jurors the prejudicial effect of such testimony as against the Suarez brothers. We hold, therefore, that the court was in error in denying the motion for severance made by the defendants Suarez.

As the defendant Naya was tried jointly with the defendants Suarez only (a severance having been granted by the court as to the other defendants, including Gonzales, apparently on motion of the prosecuting attorney —though as to this the record does not expressly show) it is unnecessary to further consider the motion for severance made by the defendant Naya, which was, at most, too vague and general in its terms to put the court in error in its refusal.

The defendants Emelio Suarez and Benigno Suarez then filed an affidavit attempting to disqualify the presiding judge from proceeding further in the case under Sec. 2674, Revised General Statutes, 1920, as amended by Chap. 9276 of the Laws of 1923, which is substantially the same as the Federal statute on the subject, Sec. 21 of the Federal Judicial Code. This affidavit, and the supporting certificate of counsel and the affidavit of two citizens of the county, appeared to comply with the form prescribed by our statute, but when it came to stating ''the facts and the reasons for the belief that any such bias or prejudice exists,'' the affidavit merely set up the previous adverse rulings of the court against these defendants, hereinabove discussed, and two adverse rulings of the court against one of the co-defendants, namely, Valentino Gonzales. The statute pro-

vides that such affidavit and supporting certificate and affidavits shall be filed not less than ten days before the beginning of the term of court, or good cause be shown for the failure to so file the same within such time. On this point the affidavit sets out that the defendants were informed against less than ten days before the filing of the application and that through no fault of theirs they were unable to make application sooner. As it is the evident purpose of this statute to protect a party litigant against the hearing of his cause before a judge who is personally prejudiced or biased against him or in favor of the adverse party, and as such party usually knows this fact ten days or more before the term of the court at which he is to be tried, it was the evident purpose of the statute in this regard to require the filing of such application at the time named in the statute in order to afford sufficient time for the designation of another judge for the trial of the cause in the manner prescribed by the laws of this State. While it was manifestly impossible, in the short time intervening between the commencement of the prosecution in this case and the trial of the same, for the defendants to have made this application ten days before the commencement of the term of court, they did have several days before the case was actually tried within which to have filed such affidavit, and it would seem that if there was in fact any personal prejudice against them on the part of the judge, they would have become cognizant of that fact before the trial of the case was entered upon. It therefore appears, and in fact the affidavit expressly states, that the defendants only gained the impression that the presiding judge was prejudiced against them by reason of his judicial rulings in the cause after it was called for trial.

The purpose of this statute is a salutary one and it should not be so construed as to defeat that purpose. As was said

by the Supreme Court of the United States in the case of Berger v. United States, 255 U. S. 22, 41 Sup. Ct. Rep. 230, 65 Law Ed. 481:

"We may say that its solicitude is that the tribunals of the country shall not only be impartial in the controversy submitted to them, but shall give assurance that they are impartial—free, to use the words of the section, from any 'bias or prejudice' that might disturb the normal course of impartial judgment. And to accomplish this end the section withdraws from the presiding judge a decision upon the truth of the matters alleged. Its explicit declaration is that, upon the making and filing of the affidavit, the judge against whom it is directed shall proceed no further therein, but another judge shall be designated in the manner prescribed in Sec. 23 to hear such matter. And the reason is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. The remedy by appeal is inadequate. It comes after the trial, and if prejudice exists, it has worked its evil, and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of mind in which there is a personal ingredient." In line with this thought, it was held by this Court, in Howell v. The State, 77 Fla. 119, 81 So. 287, that, "No discretion is vested in the judge to hear and determine the question of whether or not he is prejudiced."

But this Court, by the recent case of Theo Hirsch Co. v. McDonald Furniture Co., decided during the June Term, 1927, 114 Sou. Rep. 517, has committed itself to the doctrine that the duty rests upon the challenged judge to determine—not whether he is biased or prejudiced, which is conclusively presumed upon conformity by the applicant

with the terms of the statute—but whether the statute has been complied with; that is to say, whether the affidavit and certificate are such as the law requires, and, obviously, unless the challenged judge is disqualified the judge of another circuit is without jurisdiction. Citing Williams v. Robles, 22 Fla. 905; Conn. v. Chadwick, 17 Fla. 428; Purvis v. Frink, 55 Fla. 715, 46 So. 171. It was further said in that case: "Where affidavits setting up prejudice of a judge against a party in any action or proceeding comply with the requirements of the statute on the subject, the judge should not try the cause. Sewell v. Huffstetler, 81 Fla. 374, 87 So. 782. But he has a lawful right, and it is his duty, to pass primarily upon the sufficiency of the affidavit to invoke the statute." Citing Berger v. United States, *supra*. In the Berger case, it was held that the filing of an affidavit of personal bias or prejudice of the judge who is to preside at the trial, under the Federal statute, leaves such judge no duty other than to pass upon the legal sufficiency of the affidavit (subject to appellate review) to show the objectionable inclination or disposition, and, if legally sufficient, compels his retirement from the case without passing upon the truth or falsity of the facts affirmed. In the opinion this sentence occurs, "Of course, the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." In the Purvis case, *supra*, it is said, in the concurring opinion of Mr. Justice TAYLOR: "The application for change of venue states in general terms the legal conclusion that the judge is *prejudiced,* but when the facts are stated that comprise this alleged *prejudice,* they do not even tend to show any *prejudice* on the judge's part either for or against any of the parties to the cause, but attempt to show that the judge,

by reason of being a stockholder or director in two money-lending corporations who are total strangers to this litigation, but who loan money on the same terms as was done in this case, is *interested* (not prejudiced) *in the question* simply, that is involved in this case, *viz.*: that of the proper interpretation of the question of usury in the transaction involved.''

In this case, the presiding judge denied the application to disqualify him, and, under the authorities above quoted, the question arises, was the affidavit sufficient upon its face to invoke the statute? In the Purvis case it was held that the facts alleged to support the charge of prejudice were not sufficient to show prejudice on the judge's part within the meaning of the statute then in force, Sec. 1471 of the General Statutes of 1906, which required that the application should ''fully and distinctly set forth the facts'' upon which the charge of prejudice was made. The presiding judge in that case denied the application and on appeal his action was affirmed.

The application in this case, as to ''the facts and the reasons for the belief that such bias or prejudice exists,'' recites the institution of the prosecution, the amendment of the information so as to make the Suarez brothers parties defendant, the requirement that the defendants appear before the judge on January 10, 1927, for trial, the motions of the applicants for a continuance, for a severance, and for a bill of particulars, all of which motions were denied; that a co-defendant, Gonzales, also moved for a continuance and upon the denial of his motion counsel representing him refused to proceed further unless more time were allowed to prepare his defense; that said co-defendant, Gonzales, had applied to the judge for a disqualification of said judge and in his motion had set out fully and at length his reasons therefor, which motion was denied; that the

said judge should have granted the motion for continuance, for severance, for bill of particulars and for disqualification as filed and presented to said judge by the defendants named; that "the attitude and demeanor of Judge Petteway in continuing to act as judge in the trial of Valentino Gonzales, with whom these defendants are made party defendants, it is their fear and they think it is impossible that the parties joined with Gonzales can get a fair and impartial trial." It will be noted that this last ground of the motion, concerning the attitude and demeanor of the judge toward a co-defendant, which attitude and demeanor are not described otherwise than that the judge overruled his motion, is probably more appropriate to a motion for severance than it is to an affidavit for disqualification. But, aside from this, the trial of Valentino Gonzales is shown by the record to have been severed from that of the defendants. Futhermore, it will be noted that all of the facts and reasons alleged for the charge of prejudice against the presiding judge consisted, in substance and effect, merely upon his previous judicial rulings in the case, which the applicants state in their affidavit were erroneous, or, to use the language of the affidavit, that the judge "should have granted" the motions hereinabove referred to and discussed. That there is room for honest difference of opinion on such matters is shown by the fact that after a careful consideration of the several rulings assigned as grounds to show prejudice, we have found that the trial court was in error in only one of such rulings, and even as to that we remarked that the question was not free from difficulty. Even if the judge had been in error in all of the rulings here complained of, we are still of the opinion that mere errors of judgment on the part of a judge do not amount to bias or prejudice, so as to authorize his disqualification, under our statute.

This conclusion is abundantly supported by the authorities, a few of which we will call attention to. Thus, in *Ex Parte* American Steel Barrel Co., 230 U. S. 35, 57 L. Ed. 1379, Mr. Justice Lurton, delivering the opinion of the court, said: ''The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard. This is the plain meaning of the requirement that the affidavit shall be filed not less than ten days before the beginning of the term.'' In Hays v. Morgan, 87 Ind. 232, it is said: ''If a party is to be permitted, in the face of such a rule, to stand quietly by, without objection, make up the issues and have the cause docketed for trial upon a certain day, and suffer the time for moving for a change of venue from the county, or from the judge, to pass, and then upon the day of trial move for a change of venue from the judge to try the cause, charging bias and prejudice in the presiding judge on account of his having made some ruling against him upon a legal proposition involved in some preliminary motion, and the court is not to be permitted to exercise any discretion in the matter, such practice would entirely destroy the object and bene-

ficial purpose of such rules. We do not think that such a charge of bias and prejudice is the kind contemplated by our statute. Parties are not to be permitted at any and every stage of the progress of a cause, when the court decides a question against them, to charge the court with bias and prejudice and file a motion, supported by affidavit, for a change of venue from the judge to try the cause." In Burke v. Mayall, 10 Minn..287, discussing this question, the opinion contains this observation: "We arrogate nothing when we say that the theory of our judicial system is that courts of *nisi prius* may commit error of judgment in matters of law which are to be reviewed by courts of last resort, and to hold that such error in one instance or repeated instances, is equivalent to prejudice, would lead to absurd consequences. We are aware of no authorities which go to this extent." See also the following cases: United States v. Fricke, 261 Fed. Rep. 541; *In re,* Equitable Trust Co., 232 Fed. Rep. 836; Conn v. Chadwick, 17 Fla. 428; Johnston v. Daken, 9 Cal. 522, 99 Pac. 729; Pearson v. Hopkins, 2 N. J. Law 181; State v. Bohan, 19 Ken. 28; C. B. & Q. R. R. Co. v. Kellog, 54 Neb. 138, 74 N. W. 403; Erbaugh v. People, 140 Pac. 188; State v. Boyd (N. D.), 144 N. W. 232; 33 C. J. 1001. And in the case of Hirsch Co. v. McDonald Furniture Co., *supra,* in the opinion written by Judge West, occurs the following: "If the affidavit of the applicant states facts which clearly contain no reasonable basis for the asserted prejudice, or, if the accompanying affidavits or facts are not what the statute requires, may not the judge so determine? In other words, may not the judge so far consider the application as to determine whether the affidavit is sufficient to invoke the operation of the statute?" The opinion then proceeds to answer these questions in the affirmative.

After reading the entire record carefully, we find noth-

ing in the rulings of the court on the evidence or the re-
marks of the judge in connection with such rulings which
indicate any prejudice whatever on his part. He may have
erred in some of his rulings, but the reading of this record
indicates no desire on the part of the presiding judge to
be other than fair to both sides in his conduct of the case.
On the other hand, we are also inclined to the view that
this particular motion, though not well founded in law, was
interposed in good faith. This identical question has never
before been before this Court, and under the stress of the
impending trial, at a time when there was evidently con-
siderable feeling aroused against some of the defendants,
the repeated rulings of the court adverse to the defendants
upon the several preliminary motions in the case may have,
and no doubt did, tend to create the belief on the part of
these two plaintiffs in error and their counsel that the
judge had in some way become prejudiced against them.
But the facts and reasons alleged show no such prejudice
as the statute contemplates. To hold otherwise would make
a precedent which would tend to break down the adminis-
tration of justice in our courts.

The evidence in this case is somewhat confusing on ac-
count of the testimony dealing with the theft of so many
different automobiles, but after a careful study of the same
we have reached the conclusion that the court below was
in error in denying the motion for new trial. The informa-
tion, as we have seen, charged the defendants in all three
counts with criminal conduct with reference to ''one Ford
Coupe automobile, * * * of the value of five hundred dollars
* * * the property of R. T. Joughin and Company, a cor-
poration.'' While the State introduced evidence tending
to show the theft of other automobiles, evidently for the
purpose of showing guilty knowledge on the part of these
defendants, or their connection with some system or con-

spiracy for the stealing, receiving and disposing of automobiles, it elected to prosecute with reference to the stealing and receiving and disposing of one particular Ford coupe, belonging to R. T. Joughin and Company, and introduced in evidence a bill of sale, Exhibit A, showing the motor number of the car and a check given in payment therefor, both of which were dated February 20, 1927, and attempted to prove that on that date this particular automobile was sold by the defendants Suarez to Angel Martinez, a co-defendant who testified for the State; but when it came to proving that this was a stolen car, the testimony of Mr. Joughin, upon being recalled, showed that this car was stolen from his company twice, the first time on March 6, 1926, being recovered about a week later, and the second time on March 24, 1926. These dates were quite definitely fixed by Mr. Joughin by letters which he wrote with reference to this automobile and its loss contemporaneously with the disappearance of the car. It, therefore, appears that when this car was alleged to have been disposed of by the defendants, it had not been stolen from R. T. Joughin and Company, and that it was hardly possible for the car which was stolen from Joughin and Company in March to have been the same car disposed of by Suarez during the preceding February. It is true that the evidence tends to show that the defendants Suarez had disposed of several automobiles which were later identified and recovered by their owners as having been stolen, and the evidence also shows that in addition to taking the acknowledgments to the bills of sale covering the transfer of these automobiles, the defendant Naya also notarized, and in many instances prepared, the bills of sale of a dozen or more other automobiles which the testimony of various witnesses tended to show had been stolen during the early part of 1926 and most of them recovered later, in June or July of 1926. The

defendants Suarez were not shown to have had any connection whatsoever with the possession, sale or disposition of these other cars, and their various objections to testimony of this character, as against them, should have been sustained. The mere fact that the same notary public notarized these additional bills of sale was not of itself sufficient to authorize the admission of this testimony as against the defendants Suarez, and it not appearing anywhere in the record that the court instructed the jury that this testimony could not be considered by them as against the defendants Suarez, the error in admitting it was bound to have been prejudicial to them.

The general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show the accused has committed another crime, wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. But there are certain well recognized exceptions to this rule. Thus, where the nature of the crime is such that guilty knowledge must be proved, evidence is admissible to prove that at another time and place, not too remote, the accused committed or attempted to commit a crime similar to that charged. In other words, where guilt cannot be predicated upon the mere commission of an act, guilty knowledge may be proved by evidence of complicity in similar offenses; but where a guilty knowledge is presumed from the character of the criminal act, evidence of other crimes should not generally be received. In the case of Wallace v. The State, 41 Fla. 547, 26 So. 713, it was held by this Court that evidence of defendant's acts, prior or subsequent to the alleged offense, which logically tend to prove criminal intent or guilty knowledge, where they are material, is admissible, even though such evidence tends to prove the commission of another offense; that likewise,

where the crime charged is one of a system of criminal acts occurring so near together in point of time and so nearly similar in means as to lead to the logical inference that they are mutually dependent and committed in pursuance of the same deliberate criminal purpose and by means planned before hand, evidence of such other acts is admissible even though those acts amount to another criminal offense. But it was further held in that case that such evidence is not admissible for the purpose of proving that the defendant committed the crime charged against him, but to show his purpose, plan, intent or knowledge, or to show that the acts charged against him were not the result of accident, mistake or inadvertence, or to rebut a defense which would otherwise be open to him. See also Langford v. The State, 33 Fla. 233, 14 So. 815; Roberson v. The State, 40 Fla. 509, 24 So. 474; Gafford v. The State, 79 Fla. 581, 84 So. 602; Nickels v. The State, 90 Fla. 659, 106 So. 479, 488; Presley v. The State, 63 Fla. 37, 57 So. 605; Pittman v. State, 51 Fla. 94, 41 So. 385; 16 C. J. 586, *et seq.*; 8 R. C. L. 198-206.

Without discussing separately the numerous assignments of error based upon the admission of testimony over defendants' objections, we think it would be sufficient for the purpose of another trial to say that, under the principles above cited, many of these objections were well founded, and the overruling of the same constituted error. We think that enough has been said above to indicate the character of that testimony which should not have been admitted.

For the reasons above indicated the judgment of the court against these three plaintiffs in error must be reversed.

Reversed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.